UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

BRITTANY ZACHMAN
and ALISON ALLEN,

Plaintiffs,

v. Case No: 6:25-cv-275-JSS-CAB

HTLC VENTURES, INC.,
CHRISTINA M. HOLLERBACH,
LINDA M. HOLLERBACH, and
THEODOR R. HOLLERBACH,

Defendants.
___________________________________/

# ORDER

This case stems from Plaintiffs' claims against Defendants for certain labor law violations. (Dkt. 81.) Plaintiffs move for class certification. (Dkt. 95.) Defendants oppose the motion. (Dkt. 96.) For the reasons below, the motion is denied without prejudice.

## BACKGROUND

Plaintiffs are front-of-house (FOH) employees at Defendants' establishments. (Dkt. 95.) Defendant HTLC Ventures Inc. (HTLC) is the parent corporation of Hollerbach's German Restaurant (Hollerbach's). (Dkt. 81 at 10.) Defendants Christina M. Hollerbach, Linda M. Hollerbach, and Theodor R. Hollerbach own HTLC. (*Id.*) Plaintiffs bring this action to recover unpaid minimum wages and other damages pursuant to the Florida Minimum Wage Act (FMWA), Fla. Stat. § 448.110,

the Florida Constitution, Fla. Const. art. X, § 24, and the Fair Labor Standards Act (FLSA), 29 U.S.C. §201.

The FLSA requires employers to pay employees a minimum hourly wage of $7.25 per hour. 29 U.S.C. § 206(a). In Florida, the FMWA expressly adopts the statutory and regulatory provisions of the FLSA. Fla. Const. art. X, ¶ 24. An employee's wage under both the FLSA and the FMWA may include the employee's tips. 29 U.S.C. § 203(m). Thus, "an employer may pay an employee a cash wage below the minimum wage, so long as the employer supplements the difference with the employee's tips; this is known as an employer taking a tip credit." *Rubio v. Fuji Sushi & Teppani, Inc.*, No. 6:11-cv-1753-Orl-37TBS, 2013 WL 230216, at *2 (M.D. Fla. Jan. 22, 2013) (quotation omitted). To qualify for a tip credit, the employer must establish that the tip credit is claimed for qualified tipped employees, (2) the employees received proper notice of section 203(m), and (3) all tips received by the employees were retained by them, except when the employee participates in a valid tip pool with other customarily tipped employees. *See Kubiak v. S.W. Cowboy, Inc.*, No. 312-CV-1306-J-34JRK, 2014 WL 2625181, at *2 (M.D. Fla. June 12, 2014) (collecting cases). "If an employer fails to satisfy any of these preconditions, the employer may not claim the tip credit, regardless of whether the employee suffered actual economic harm as a result." *Id.* (collecting cases). Additionally, a tip pool—a system where all tips earned during a shift are collected into a shared pool and then redistributed—"may include only customarily tipped employees." *Id.* (collecting cases). (*See* Dkt. 81-1 at 14; Dkt. 81-2 at 13.) As a result, "a valid tip pool generally does not include employees who

do not customarily and regularly receive[] tips, such as dishwashers, cooks, chefs, and janitors." *Kubiak*, 2014 WL 2625181, at *2. "However, a tipped employee may voluntarily choose to share tips with an otherwise ineligible employee so long as that tip-sharing is done without coercion by the employer." *Id.*

According to the operative amended complaint, Defendants "claimed a tip credit for . . . Plaintiffs and other similarly situated tipped employees[] and paid these tipped employees a subminimum minimum wage for their work hours in these positions." (Dkt. 81 at 18.) Purportedly, Defendants operated a mandatory tip pool that including non-tipped, back-of-house (BOH) employees. (*Id.* at 20.) Additionally, Defendants allegedly failed to notify employees of the tip credit. (*Id.* at 21.) Finally, Defendants seemingly maintained a policy that required employees to purchase their own uniforms and would deduct the cost of the uniform from their wages. (*Id.* at 24.)

Pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(3), Plaintiffs move to certify the following class:

> Plaintiffs move to certify a class action pursuant to Fed. R. Civ. P. 23 on behalf of all current and former hourly front-of-house employees (including servers, bartenders, runners, bussers, porters, barbacks, among others) who were paid a below minimum wage rate while working for Defendants at Defendants' Hollerbach's German Restaurant located at 201-205 E 1st Street, Sanford, Florida 32771 on or after the date that is five (5) years before February 4, 2025[.]

(Dkt. 95 at 1.) Plaintiffs rely on emails, employee handbooks, payroll documents, and deposition testimony taken from HTLC executives to establish that the allegedly illegal practices took place during the specified period, and that the purported class's claims fit squarely within the requirements for Rule 23 class certification. (*Id.* at 1–6.)

Additionally, on May 18, 2026, the parties entered a joint stipulation agreeing that any prior agreement in which a putative class member agreed to release claims against Defendants "shall not bar or limit that putative [c]lass member from recovering further funds pursuant to the [c]laims in this action." (*See* Dkt. 99 at 2.)

**APPLICABLE STANDARDS**

"The class action is an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348 (2011) (quotation omitted). The burden of establishing the propriety of class certification "rests with the advocate of the class." *Valley Drug Co. v. Geneva Pharms., Inc.*, 350 F.3d 1181, 1187 (11th Cir. 2003). "[I]f doubts remain about whether the standard is satisfied, the party with the burden of proof loses." *Brown v. Electrolux Home Prods., Inc.*, 817 F.3d 1225, 1233 (11th Cir. 2016) (quotation omitted). "All else being equal, the presumption is against class certification because class actions are an exception to our constitutional tradition of individual litigation." *Id.* A "district court has broad discretion in determining whether to certify a class." *Washington v. Brown & Williamson Tobacco Corp.*, 959 F.2d 1566, 1569 (11th Cir. 1992); *accord Griffin v. Carlin*, 755 F.2d 1516, 1531 (11th Cir. 1985) ("Questions concerning class certification are left to the sound discretion of the district court.").

Federal Rule of Civil Procedure 23(a) requires the movant to demonstrate the following when moving for class certification:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common

> to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). These prerequisites are commonly called the "numerosity, commonality, typicality, and adequacy of representation" requirements. *See Williams v. Reckitt Benckiser, LLC*, 65 F.4th 1243, 1260 (11th Cir. 2023). After meeting the requirements of Rule 23(a), the party seeking class certification must establish at least one of the alternative requirements of Rule 23(b). *Valley Drug*, 350 F.3d at 1188.

A Rule 23(b)(3) class is permitted if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Also, the class representative must have standing to sue, and the proposed class must be adequately defined and clearly ascertainable. *See Carriuolo v. Gen. Motors Co.*, 823 F.3d 977, 984 (11th Cir. 2016) ("[A] plaintiff seeking to represent a proposed class must establish that the proposed class is adequately defined and clearly ascertainable." (quotation omitted)); *Prado-Steiman ex rel. Prado v. Bush*, 221 F.3d 1266, 1279 (11th Cir. 2000) ("[P]rior to the certification of a class, and technically speaking before undertaking any formal typicality or commonality review, the district court must determine that at least one named class representative has Article III standing to raise each class subclaim.").

## ANALYSIS

### A. Standing

A prerequisite to class certification is that "the proposed class representatives have standing to pursue the claims as to which class[ ]wide relief is sought." *Wooden v. Bd. of Regents of Univ. Sys. of Ga.*, 247 F.3d 1262, 1287 (11th Cir. 2001). To satisfy "the case-or-controversy requirement of Article III," Plaintiffs must prove that they have standing to pursue each of the claims asserted in the complaint. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992). Proving standing requires Plaintiffs to establish that they "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). Further, "[t]o have standing to represent a class, a party must not only satisfy the individual standing prerequisites, but . . . also be part of the class and possess the same interest and suffer the same injury as the class members." *Mills v. Foremost Ins. Co.*, 511 F.3d 1300, 1307 (11th Cir. 2008) (quotation omitted). At least one named class representative must have standing to raise each class claim or subclaim. *See In re Equifax Inc. Customer Data Sec. Breach Litig.*, 999 F.3d 1247, 1261 (11th Cir. 2021) ("[O]nly one named plaintiff must have standing as to any particular claim in order for it to advance.").

Here, neither party contests that Plaintiffs have standing, and the court concludes that they do. (Dkt. 81 at 20, 44 (explaining that Plaintiffs are employees that worked in tipped positions, paid a subminimum wage, and "were required to

participate in an employer-operated, mandatory tip pool").) *See Vazquez v. Marriott Int'l, Inc.*, No. 8:17-cv-116-MSS-MAP, 2018 WL 3860217, at *2 (M.D. Fla. Aug. 7, 2018) (concluding that the plaintiff had standing in regards to a motion to certify a class where the defendant did not contest it); *see also Teahl v. Lazy Flamingo, Inc.*, No. 2:13-cv-833-FtM-38CM, 2015 WL 179367, at *2 (M.D. Fla. Jan. 14, 2015) (finding that the plaintiff "was a server" and "was not paid minimum wage" and thus had standing); *Balassiano v. Fogo De Chao Churrascaria (Orlando) LLC*, No. 6:19-cv-2140-Orl-78EJK, 2020 WL 7365264, at *2 (M.D. Fla. Dec. 15, 2020) (finding that the plaintiff had standing because he alleged that he worked at the restaurant and was forced to participate in an allegedly illegal tip pool), *report and recommendation adopted by* No. 6:19-cv-2140-Orl-78EJK, 2021 WL 2019722, at *1 (M.D. Fla. Jan. 7, 2021).

**B. Adequacy of Class Definition**

"Before a district court may grant a motion for class certification, a plaintiff seeking to represent a proposed class must establish that the proposed class is adequately defined and clearly ascertainable." *Little v. T-Mobile USA, Inc.*, 691 F.3d 1302, 1304 (11th Cir. 2012) (quotation omitted). "A class is clearly ascertainable if . . . its membership is capable of being determined." *Cherry v. Dometic Corp.*, 986 F.3d 1296, 1303 (11th Cir. 2021) (quotation omitted). Further, "[a] class is inadequately defined if it is defined through vague or subjective criteria." *See id.*; *see also Rink v. Cheminova, Inc.*, 203 F.R.D. 648, 660 (M.D. Fla. 2001) ("[A] vague class definition portends significant manageability problems for the court.").

Plaintiffs seek to certify a class on behalf of all current and former hourly FOH "employees (including servers, bartenders, runners, bussers, porters, barbacks, among others) who were paid a below minimum wage rate while working for Defendants at Defendants' Hollerbach's German Restaurant . . . on or after the date that is five (5) years before February 4, 2025." (Dkt. 95 at 1.)[1]

Defendants argue that the proposed class is "vague, overinclusive, and difficult to apply." (*See* Dkt. 96 at 5–6.) The court agrees. The proposed definition seemingly "fail[s] to limit the proposed class to those tipped employees who were not informed of the tip credit policy and/or were not able to retain all of their tips by virtue of participating in an invalid tip pool." *See Bennett v. Hayes Robertson Group, Inc.*, 880 F. Supp. 2d 1270, 1278 (S.D. Fla. 2012) (declining to certify class that included all hourly paid employees and "fail[ed] to distinguish between tipped and non-tipped employees"). While the proposed class definition does limit the class to FOH employees, it is unclear whether FOH is synonymous with tipped employees. (*See* Dkt. 81-1 at 8 (defining FOH as including managers, among other positons).)

Plaintiffs contend that "the [c]lass can be easily identified through Hollerbach's payroll records" which allegedly identify "who worked in a [FOH] tipped positions, including as a server, bartender, runner, busser, porter, and barback." (Dkt. 95 at 18.)[2]

---

[1] The operative amended complaint defines the class as "[a]ll hourly-paid FOH employees employed at any of Defendants' [e]stablishments at any time during the statute of limitations period." (Dkt. 81 at 28 (emphasis omitted).)

[2] The court notes that Plaintiffs do not point to any specific records that demonstrate that the class can be "easily identified," and in fact, do not identify any legal authority establishing that their proposed class is adequately defined. (Dkt. 95 at 18.) *See United States v. Markovich*, 95 F.4th 1367, 1379 (11th Cir. 2024) (explaining that a party forfeits a position when they "cite[] no legal authority to support

However, the lists of FOH employees differ within the attached records. (*See* Dkt. 81-1 at 8 (including only managers, servers, bartenders, support host, bussers, expo, and runners within the FOH category); Dkt. 95-9 at 1 (defining FOH employees as hosts, service bartenders, bussers, and food runners).) Further, it is unclear which of these positions are tipped, which "is necessary to ensure the proposed class is made up only of those . . . who share commonality." *See Bennett*, 880 F. Supp. 2d at 1278. "Failing to make these distinctions places the burden on the fact-finder." *Id.*

Thus, the court concludes that Plaintiffs have not met their "burden to establish that their proposed class is adequately defined and clearly ascertainable." *See Cherry*, 986 F.3d at 1302 (quotation omitted); *see also Teahl*, 2015 WL 179367, at *2 (finding a proposed class definition insufficient because the term "server" was too broad and it was unclear whether it "include[d] only waiters and waitresses or if bartenders [we]re included in the class" and further "the proposed class definition d[id] not narrowly include employees subject to an invalid tip pool"). But because the class definition can be amended to address these issues, the court allows Plaintiffs to file a renewed motion to certify. *See Teahl v. Lazy Flamingo, Inc.*, No. 2:13-cv-833-FtM-38CM, 2016 WL 4136537, at *5 (M.D. Fla. Jun. 21, 2016) (finding a class definition to be sufficient after it was amended to "specifically identify servers and bartenders who worked at [the defendant restaurant] for a specific period of time, had been paid a tip credit wage, and were required to share tips with cooks"), *report and recommendation adopted by* No.

---

it"); *McCreight v. AuburnBank*, 117 F.4th 1322, 1332 (11th Cir. 2024) ("[P]laintiffs [cannot] simply allege facts and let the district court figure things out from there.").

2:13-CV-833-FTM-38CM, 2016 WL 4063256, at *1 (M.D. Fla. July 29, 2016); *see also Cliff v. Payco Gen. Am. Credits, Inc.*, 363 F.3d 1113, 1133 n.16 (11th Cir. 2004) ("[C]lass definitions may undergo modification, possibly several times, during the course of a class action."); *Kubiak*, 2014 WL 2625181, at *20 (approving of a definition that used "objective criteria" which could "be analyzed in a manageable and administratively feasible way," and whose membership could be "confirmed by reference to [the d]efendants' employment records during the putative class period"). Accordingly, any renewed motion to certify class shall clarify which FOH positions are tipped and limit the proposed class to only those positions. *See Collado v. 405 N. River Drive, LLC*, No. 22-cv-23074-BLOOM/Torres, 2023 WL 8371030, at *3 (S.D. Fla. Dec. 4, 2023) (approving of a class definition "tailored to only included tipped employees"); *Lopez v. Hayes Robertson Grp., Inc.*, No. 13-10004-CIV, 2013 WL 10561294, at *4 (S.D. Fla. Sept. 23, 2013) (certifying a class of "[a]ll hourly paid tipped servers and bartenders").

Because the court concludes that the class is not adequately defined, the analysis could end here. *See Cherry*, 986 F.3d at 1303 ("Without an adequate class definition, a district court would be unable to evaluate whether a proposed class satisfies Rule 23(a)."). Even so, the court addresses the remaining factors. *See Bennett*, 880 F. Supp. 2d at 1279 (continuing the Rule 23(a) analysis after finding that the proposed class definition was "vague, indefinite, and overbroad"); *Teahl*, 2015 WL 179367, at *2–3 (proceeding to analyze the Rule 23(a) factors after concluding that the proposed class definition was "vague and difficult to apply").

### C. Rule 23(a) Factors

#### 1. Numerosity

A class action is appropriate "only if . . . the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "[W]hile there is no fixed numerosity rule, generally less than twenty-one is inadequate[ and] more than forty [is] adequate." *Cox v. Am. Cast Iron Pipe Co.*, 784 F.2d 1546, 1553 (11th Cir. 1986) (quotation omitted); *see Mills v. Foremost Ins. Co.*, 269 F.R.D. 663, 670 (M.D. Fla. 2010) ("As a general rule, . . . more than forty class members will be adequate to meet the numerosity requirement, while fewer than twenty-one class members will be inadequate.").

Plaintiffs satisfy the initial numerosity requirement as they assert there are "at least 178 [c]lass [m]embers." (Dkt. 95 at 19; *see* Dkt. 95-5.) Additionally, payroll records suggest that there are at least ninety employees who worked "[t]ipped [h]ours" between 2022 and 2025. (*See* Dkt. 95-5.) *See Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1267 (11th Cir. 2009) ("[A] plaintiff still bears the burden of making some showing, affording the district court the means to make a supported factual finding, that the class actually certified meets the numerosity requirement." (emphasis omitted)); *Evans v. U.S. Pipe & Foundry Co.*, 696 F.2d 925, 930 (11th Cir. 1983) ("Although mere allegations of numerosity are insufficient to meet this prerequisite, a plaintiff need not show the precise number of members in the class.").

Defendants note that "Plaintiffs do not discuss . . . the impracticability of joinder" and "there is no evidence that the proposed class members are geographically dispersed." (Dkt. 96 at 8; *see* Dkt. 95.) It is true that "[t]he proper focus is not on numbers alone, but whether joinder of all members is practicable in view of the numerosity of the class and all other relevant factors." *Phillips v. Joint Legis. Comm. on Performance & Expenditure Rev.*, 637 F.2d 1014, 1022 (5th Cir. 1981). "Practicability of joinder depends on many factors, including, for example, the size of the class, ease of identifying its numbers and determining their addresses, facility of making service on them if joined and their geographic dispersion." *Kilgo v. Bowman Transp., Inc.*, 789 F.2d 859, 878 (11th Cir. 1986). In any event, "where the numerosity question is a close one, a balance should be struck in favor of a finding of numerosity, since the court has the option to decertify pursuant to Rule 23(c)(1)." *Evans*, 696 F.2d at 930; *accord Strawser v. Strange*, 307 F.R.D. 604, 609–11 (S.D. Ala. 2015) (certifying class of sixty-eight known individuals and concluding that it was impracticable to join them all because a class action is more efficient and would serve the interests of judicial economy).

Ultimately, "[w]hile geographic diversity is one factor for the [c]ourt to consider, the [c]ourt finds that joinder is impractical in this case, given the large number of potential class members." *See Agan v. Katzman & Korr, P.A.*, 222 F.R.D. 692, 697 (S.D. Fla. 2004); *see also Bennett*, 880 F. Supp. 2d at 1280 (concluding that the numerosity requirement was satisfied where the estimated class included at least fifty employees residing in the same geographic area as the defendants); *see also Kubiak*,

2014 WL 2626181, at *13 (finding that "joinder of more than 150 to 200 individuals would be impracticable" because of "the number of putative class members, as well as the relatively small size of their individual claims" despite the proposed class seemingly lacking geographic dispersion).

**2. Commonality**

Commonality requires "questions of law or fact common to the class . . . ." Fed. R. Civ. P. 23(a)(2). To satisfy this element, the class members' "claims must depend upon a common contention," and that common contention "must be of such a nature that it is capable of class[-]wide resolution." *Sliwa v. Bright House Networks, LLC*, 333 F.R.D. 255, 273–74 (M.D. Fla. 2019) (quoting *Dukes*, 564 U.S. at 350). "[F]or purposes of Rule 23(a)(2) even a single common question will do." *Carriuolo*, 823 F.3d at 984 (quoting *Dukes*, 564 U.S. at 359); *accord Williams v. Mohawk Indus., Inc.*, 568 F.3d 1350, 1355 (11th Cir. 2009) ("Commonality requires that there be at least one issue whose resolution will affect all or a significant number of the putative class members.").

Plaintiffs maintain that there are several factual and legal questions shared by all members of the purported class, "including, among others, whether: (1) Defendants claimed a tip credit from [c]lass [m]embers' wages[,] (2) Defendants informed [c]lass [m]embers of all the information required to take a tip credit[,] (3) Defendants' required the [c]lass [m]embers to participate in a tip pool policy with back-of-house staff[,] (4) Defendants unlawfully retained tips[,] and (5) Defendants required [c]lass [m]embers to pay for uniform expenses." (Dkt. 95 at 20.) Commonality is a

"relatively light burden" that "necessarily requires an antecedent finding that there is at least one common question of law or fact," and the court concludes that Plaintiffs satisfy this requirement. *See Vega*, 564 F.3d at 1268; *Griffith v. Landry's, Inc.*, No. 8:14-cv-3212-T-35JSS, 2017 WL 11002193, at *5 (M.D. Fla. Jan. 30, 2017) ("An alleged policy or practice of treating an entire class unlawfully satisfies the commonality requirement of Rule 23(a)(2)."); *see also Teahl*, 2016 WL 4136537, at *7–8 (finding the commonality requirement met where there was a common legal issue of "whether the cooks were properly included in the tip pool"); *Lopez*, 2013 WL 10561294, at *5 (finding commonality met by questions of whether a shift deduction resulted in the plaintiffs "being compensated below the sub-minimum wage for tipped employees" and "whether [the d]efendants' policies invalidated their reliance on the tip credit exemption, and therefore resulted in [the p]laintiffs being denied the required minimum wage").

Defendants disagree. (*See* Dkt. 96 at 9–12.) They contend that Plaintiffs have not shown a common answer will resolve liability for the proposed class. (*Id.* at 9.) But commonality only requires "the capacity of a class-wide proceeding to generate common answers." *See Dukes*, 564 U.S. at 350 (emphasis omitted); *Schojan v. Papa Johns Intern, Inc.*, 303 F.R.D. 659, 664 (M.D. Fla. 2014) (noting that a trial court should not determine the merits of a claim at the class certification stage). Defendants also argue that commonality fails because "whether particular roles were customarily and regularly tipped (or otherwise eligible) can be role-specific and fact-intensive" and because "[w]hether uniform items were required, whether any deduction occurred,

and whether a deduction reduced wages below the minimum in a given workweek are inherently individualized." (Dkt. 96 at 11.)[3] Ultimately, these "objections to commonality focus more on the predominance criterion of Rule 23(b)(3)" which the court "will analyze . . . in due course." *See Nuwer v. FCA US LLC*, 343 F.R.D. 638, 650 (S.D. Fla. 2023); *see also In re Terazosin Hydrochloride*, 220 F.R.D. 672, 685 (S.D. Fla. 2004) ("Where the complaint alleges that the [d]efendants have engaged in a standardized course of conduct that affects all class members, the commonality requirement will generally be met."); *Collado*, 2023 WL 8371030, at *6 (finding commonality because "the elements involved in proving each claim, including the facts necessary to establish those elements, overlap significantly").

Defendants also argue that Plaintiffs fail to produce common evidence that "ineligible roles participate[d] in the tip pool for each relevant period, or that any such participation affected each class member's pay in the same way." (Dkt. 96 at 11.) But Plaintiffs do offer evidence that the tip pool was shared with "kitchen staff, including line cooks[,] and prep staff." (Dkt. 95-3 at 1.) Further, "the court need not make a determination at this juncture" regarding whether any roles "were properly included in the tip pool to conclude whether the commonality requirement is met." *See Teahl*, 2016 WL 4136537, at *8 (concluding that commonality was satisfied because there

[3] The court also notes that this conclusion is reinforced by the fact that none of the cases Defendants point to in support of their commonality arguments deal with class certification. (Dkt. 96 at 11–12.) *See Rafferty v. Denny's, Inc.*, 13 F.4th 1166 (11th Cir. 2021) (reviewing a district court's entry of summary judgment); *Dix Palombo v. RCSH Operations, LLC*, No. 2:20-CV-98-FTM-29MRM, 2020 WL 5094849 (M.D. Fla. Aug. 28, 2020) (denying a motion to dismiss); *Rubio v. Fuji Sushi & Teppani, Inc.*, No. 6:11-CV-1753-ORL-37, 2013 WL 230216 (M.D. Fla. Jan. 22, 2013) (deciding a motion for summary judgment);

was a common legal issue as to whether the cooks were properly included in the tip pool); *see also Rubio*, 2013 WL 230216, at *3 (noting that "chefs [and] cooks [are] occupations that would not be eligible to participate in a tip[-]pooling arrangement" (alterations adopted and quotation omitted)).

Thus, the court finds the commonality requirement is met. *See Williams*, 568 F.3d at 1355 ("Commonality requires that there be at least one issue whose resolution will affect all or a significant number of the putative class members." (quotation omitted)); *see also Celeski v. Tom Brown's Rest. at Madison LLC*, No. 5:22-cv-01600-HNJ, 2025 WL 2741829, at *7 (N.D. Ala. Mar. 27, 2025) (holding that the defendants "alleged practice of requiring tipped employees to share tips with bartenders and non-tipped employees . . . presents an issue common to all potential class members," thereby "satisfy[ing] th[e] low bar" of commonality); *Griffith*, 2017 WL 11002193, at *5 (concluding there were common issues, including, but not limited to, "whether class members were paid an hourly wage rate lower than the full Florida minimum wage" and whether the defendants "made deductions from tipped employees' wages and/or tips"); *Kubiak*, 2014 WL 2625181, at *15 (finding that commonality was satisfied where there was a common legal question as to "whether any control that may have been exercised by the tip proceeds violated the requirements for use of the [t]ip [c]redit").

### 3. Typicality

Typicality requires that "the claims or defenses of the representative parties [be] typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). The class representatives' claims need not be identical to those of the individual class members; "there need only exist a sufficient nexus between the legal claims of the named class representatives and those of individual class members to warrant class certification." *Ault v. Walt Disney World Co.*, 692 F.3d 1212, 1216 (11th Cir. 2012) (cleaned up). "This nexus exists 'if the claims or defenses of the class and the class representative arise from the same event or pattern or practice and are based on the same legal theory.'" *Id.* (quoting *Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984)). Furthermore, "[a] class representative must possess the same interest and suffer the same injury as the class members in order to be typical under Rule 23(a)(3)." *Vega*, 564 F.3d at 1275 (quoting *Busby v. JRHBW Realty, Inc.*, 513 F.3d 1314, 1322 (11th Cir. 2008)). Lastly, the presence of substantial factual differences does not negate a finding that the typicality requirement has been met so long as "there is a strong similarity of legal theories." *Loc. 703, I.B. of T. Grocery & Food Emps. Welfare Fund v. Regions Fin. Corp.*, 762 F.3d 1248, 1259 (11th Cir. 2014) (quoting *Williams,* 568 F.3d at 1357). "Like commonality, the test for typicality is not a demanding one." *Luczak v. Nat'l Beverage Corp.*, 548 F. Supp. 3d 1256, 1265 (S.D. Fla. 2021); *accord Celeski*, 2025 WL 2741829, at *7.

Plaintiffs maintain that the named Plaintiffs claims are typical of the class because they arise out of the same uniformly imposed tip pool policy, uniform-deduction policy, and insufficient tip credit notice. (Dkt. 95 at 21–22.) Defendants do

not dispute this.[4] (*See* Dkt. 96.) Still, to the extent that Defendants' arguments against commonality also apply to typicality, the court notes that "mere factual difference[s] in the claims of the class members" do not defeat typicality. *See Griffith*, 2017 WL 11002193, at *6. (*See* Dkt. 96 at 9–12.) In fact, "[a] proposed class representative may still meet the typicality requirement even where some factual differences exist." *Id.*; *see also Murray v. Auslander*, 244 F.3d 807, 811 (11th Cir. 2001) ("The typicality requirement may be satisfied despite substantial factual differences . . . ."); *Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984) ("A factual variation will not render a class representative's claim atypical unless the factual position of the representative markedly differs from that of the other members of the class.").

Here, the named Plaintiffs worked in the same restaurant, at the same time, and were subjected to the same polices as the entire class. (*See* Dkt. 95 at 21–22.) Thus, the court finds that named Plaintiffs' claims "arise from the same event or pattern or practice and are based on the same legal theory" as the claims of the class. *See Kornberg*, 741 F.2d at 1337; *see also Celeski*, 2025 WL 2741829, at *7 (finding typicality despite the fact that the"[p]laintiffs' damages may vary," because "all class members

---

[4] Although Defendants state that they oppose typicality, they include no argument to that end and instead seem to conflate typicality and commonality. (*See* Dkt. 96 at 9–12.) "The typicality and commonality requirements are distinct but interrelated." *Cooper v. S. Co.*, 390 F.3d 695, 713 (11th Cir. 2004). "Typicality differs from commonality in that it focuses on the named class representative's individual characteristics in comparison to the proposed class." *Bennett*, 880 F. Supp. 2d at 1280. Defendants do not discuss the named Plaintiffs or explain how their claims are atypical, and a district court is "not obligated to read minds and ordinarily will not construct arguments or theories that a party has failed to raise." *See Branch Banking & Tr. Co. v. Howard*, No. 12-0175-WS-N, 2013 WL 951652, at *4 (S.D. Ala. Mar. 8, 2013) (footnote omitted); *see also Fils v. City of Aventura*, 647 F.3d 1272, 1284 (11th Cir. 2011) ("[D]istrict courts cannot concoct or resurrect arguments neither made nor advanced by the parties.").

suffered the same injury as the proposed class representatives"); *Teahl*, 2015 WL 179367, at *4 (finding that the typicality element was satisfied because the named plaintiff "claims . . . rise out of the same conduct, alleged facts, and legal basis"); *Lopez*, 2013 WL 10561294, at *5 (finding typicality was met even though the named plaintiffs worked at only three of the five restaurants at issue because the claims challenged the same compensation policy that applied to all the class members).

**4. Adequacy of Class Representation**

The final Rule 23(a) element requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Adequacy refers "to both the named plaintiff[s] and counsel." *London v. Wal-Mart Stores, Inc.,* 340 F.3d 1246, 1253 (11th Cir. 2003). Adequacy of representation "encompasses two separate inquiries: (1) whether any substantial conflicts of interest exist between the representatives and the class[,] and (2) whether the representatives will adequately prosecute the action." *Valley Drug*, 350 F.3d at 1189 (quotation omitted). "[T]he existence of minor conflicts alone will not defeat a party's claim to class certification: the conflict must be a fundamental one going to the specific issues in the controversy." *Id.* at 1189 (quotation omitted). "A fundamental conflict exists where some party members claim to have been harmed by the same conduct that benefitted other members of the class." *Id.*

Named Plaintiffs maintain that they are adequate representatives because they are members of the class and have no major conflict of interest with the class members. (Dkt. 95 at 22–23.) The court agrees. *See Pickett v. Iowa Beef Processors*, 209 F.3d 1276,

1280 (11th Cir. 2000) ("[A] party's claim to representative status is defeated only if the conflict between the representative and the class is a fundamental one, going to the specific issues in controversy."). Without citation to legal authority, Defendants assert that Plaintiff Brittney Zachman's retaliation claim "may create a conflict," that "Plaintiffs seek to represent a broad set of roles with potentially divergent interests," and that Plaintiffs "propose to litigate across multiple distinct theories . . . that will require individualized evidence and defenses, creating a risk of subordinating some class members' issues to others." (*See* Dkt. 96 at 12–13.) Because these arguments do not rely on any legal authority, the court declines to consider them. *See United States v. Markovich*, 95 F.4th 1367, 1379 (11th Cir. 2024) (explaining that a party forfeits a position when they "cite[] no legal authority to support it").

Ultimately, because named Plaintiffs seek the same relief as the entire class, and have no "significant conflict[s] of interest," the court finds that named Plaintiffs are adequate class representatives. (*See* Dkt. 95 at 21–23.) *See Dickens v. GC Servs. Ltd. P'ship*, 706 F. App'x 529, 537 (11th Cir. 2017) (holding that a "district court abused its discretion in concluding that" the named plaintiff "was an inadequate representative in the absence of a significant conflict of interest between [the named plaintiff] and the class"); *see also Griffith*, 2017 WL 11002193, at *28 (finding adequacy was satisfied because the defendants did not raise an adequacy challenge and there were no substantial conflicts between the named plaintiff and the class); *Kubiak*, 2014 WL 2625181, at *17 (finding that adequacy was satisfied despite several of the plaintiffs having made statements that could conflict with other plaintiffs because all of the

plaintiffs would similarly benefit if the prospective class was successful and the defendants did not establish a disqualifying conflict of interest).

The adequacy requirement also asks whether the plaintiffs' counsel is "qualified, experienced, and generally able to conduct the proposed litigation." *Griffin*, 755 F.2d at 1533. Defendants do not challenge the qualifications of Plaintiffs' attorneys or the attorneys' ability to prosecute this action. (*See* Dkt. 96.) "After reviewing the record, the court is satisfied that Plaintiffs' attorneys are qualified, experienced, and can adequately prosecute this action." *See Powers v. Health First, Inc.*, No. 6:23-cv-375-JSS-RMN, 2026 WL 850550, at *11 (M.D. Fla. Mar. 27, 2026). (*See* Dkt. 95-1.)

**D. Rule 23(b)(3) Certification**

Plaintiffs also seek class certification under Rule 23(b)(3). (Dkt. 95 at 23–27.) Class certification pursuant to Rule 23(b)(3) requires that "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The court first addresses predominance before turning to superiority.

**1. Predominance**

Predominance requires that "the issues in the class action that are subject to generalized proof and thus applicable to the class as a whole[] must predominate over those issues that are subject only to individualized proof." *Kerr v. City of W. Palm Beach*, 875 F.2d 1546, 1558 (11th Cir. 1989) (quotation omitted). An individual issue "is one

where members of a proposed class will need to present evidence that varies from member to member, while a common question is one where the same evidence will suffice for each member to make a prima facie showing or the issue is susceptible to generalized, class-wide proof." *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) (alteration adopted and quotation omitted). Thus, common issues do not predominate if "as a practical matter, the resolution of [an] overarching common issue breaks down into an unmanageable variety of individual legal and factual issues." *Babineau v. Fed. Exp. Corp.*, 576 F.3d 1183, 1191 (11th Cir. 2009) (quotation omitted). "Even if the court can identify common questions of law or fact . . . the predominance inquiry is far more demanding than Rule 23(a)'s commonality requirement." *Vega*, 564 F.3d at 1270 (alterations adopted and quotation omitted). In fact, "predominance looks to whether significant questions concerning ultimate liability remain after the resolution of any common issues." *Carter v. City of Montgomery*, 108 F.4th 1334, 1342 (11th Cir. 2024) (quotation omitted).

Here, Plaintiffs maintain the issues at hand stem from common policies of improper tip-pooling, unlawful uniform deductions, and inadequate notice of the application of a tip credit. (*See* Dkt. 95 at 24–25.) Defendants argue that individualized liability questions, as well as damages and defenses predominate, and individualized release and settlement issues reinforce predominance problems.[5] (*See*

[5] At the time of filing, Plaintiffs had a pending motion for a protective order regarding the release and settlement issues. (Dkt. 88.) On May 18, 2026, the parties filed a joint stipulation stating that any prior agreement "shall not bar or limit that putative [c]lass member from recovering further funds pursuant to the [c]laims in this action." (Dkt. 99 at 2.) The joint stipulation was signed as enforceable

Dkt. 96 at 14–16.) The court first briefly discusses the liability questions before moving to damages and defenses.

**a) Liability Questions**

Plaintiffs maintain that predominance is established because proof of Defendants' liability arises out of common policies and "rel[ies] on similar evidence– namely, Defendants' internal correspondence, employee handbook, payroll records, and . . . deposition testimony." (Dkt. 95 at 24.) Defendants disagree, contending that there will be a need for individual determinations regarding whether "each individual was a tip-credit employee, a tip-support employee, or a hybrid employee in each relevant period," "whether and how each employee was informed of the tip credit," and "whether the alleged uniform item(s) were required for that role or time and whether any charge or deduction occurred." (Dkt. 96 at 15.) Defendants cite legal authority in support of the general proposition that "[c]ourts deny certification when the claims require individualized mini-trials over job duties, pay practices, and defenses," without citing any authority or record evidence to explain why individualized liability questions predominate in this case or in similar cases. (*Id.*) Still, "[t]he party seeking class certification has the burden of proof." *See Brown*, 817 F.3d at 1233 (emphasis omitted). Because the court has determined that it is denying the motion to certify on a different basis, the court declines to fully analyze these underdeveloped arguments at this stage. *See Bennett*, 880 F. Supp. 2d at 1278, 1282

---

pursuant to Middle District of Florida Local Rule 3.05(b) on May 18, 2026. (Dkt. 101.) Thus, the court does not address arguments regarding the release and settlement issues.

(completing the Rule 23(a) analysis after finding that the proposed class definition was "vague, indefinite, and overbroad" but declining to "shift to an analysis under Rule 23(b)(3)"); *Teahl*, 2015 WL 179367, at *5 (same).

**b) Damages and Defenses**

Defendants assert that determining "individualized damages" for each class member would require "individualized reconciliation and individualized defenses." (Dkt. 96 at 15.) Yet, "the presence of individualized damages issues does not prevent a finding that the common issues in the case predominate." *Allapattah Servs., Inc. v. Exxon Corp.*, 333 F.3d 1248, 1261 (11th Cir. 2003). Plaintiffs maintain that "damages could be calculated for the class using the same formula, such as subtracting the reduced wage paid from full minimum wage to determine tip credit damages, adding up uniform expenses deducted on payroll records, and calculating tip recoupment through Hollerbach's sales records." (Dkt. 95 at 25.) The court is satisfied by this proposed method. *See Tyson*, 577 U.S. at 453 ("When one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members." (quotation omitted)); *Sacred Heart Health Sys., Inc. v. Humana Mil. Healthcare Servs., Inc.*, 601 F.3d 1159, 1179 (11th Cir. 2010) ("Individualized damages issues are of course least likely to defeat predominance where damages can be computed according to some formula, statistical analysis, or other easy or essentially mechanical methods." (quotation omitted)).

**2. Superiority**

Superiority requires the court to analyze "the relative advantages of a class action suit over whatever other forms of litigation might be realistically available to the plaintiffs." *Klay v. Humana, Inc.*, 328 F.3d 1241, 1269 (11th Cir. 2004). Courts must determine whether "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). In making this determination, courts consider (1) the interest of members of the class in individually controlling the prosecution or defense of separate actions, (2) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class, (3) the desirability or undesirability of concentrating the litigation of the claims in the particular forum, and (4) the difficulties likely to be encountered in the management of the class action. *See* Fed. R. Civ. P. 23(b)(3)(A)–(D).

Plaintiffs assert that a class action is superior because "class-wide issues predominate over any minor individual variations," "courts have found class actions especially superior [in employment cases] where current employees are involved," and "some class members only worked at Hollerbach's briefly, making their claims too small to justify the expense of individual litigation." (Dkt. 95 at 25–26.) Defendants argue that "Plaintiffs have not shown that individual actions, joinder, or other mechanisms are impracticable, particularly given the individualized proof needed on liability and damages." (Dkt. 96 at 19–20.) Because the court declines to fully address predominance at this stage, and because "the lack of predominance belies any suggestion that a fair administration of the class claims could save the resources of

both the court and the parties," the court declines to determine whether a class action is superior. *See Sacred Heart*, 601 F.3d at 1184 (alterations adopted and emphasis and quotation omitted); *id.* ("[T]he predominance analysis has a tremendous impact on the superiority analysis for the simple reason that, the more common issues predominate over individual issues, the more desirable a class action lawsuit will be as a vehicle for adjudicating the plaintiffs' claims." (ellipses and quotation omitted)); *Klay*, 382 F.3d at 1269 (explaining that whether common issues predominate over all class members' claims "has a tremendous impact on the superiority analysis . . . for the simple reason that, the more common issues predominate over individual issues, the more desirable a class action lawsuit will be as a vehicle for adjudicating the plaintiffs' claims").

## CONCLUSION

Accordingly, Plaintiffs' motion to certify class (Dkt. 95) is **DENIED without prejudice**. Plaintiffs may file a renewed motion to certify on or before September 21, 2026.

**ORDERED** in Orlando, Florida, on August 14, 2026.

JULIE S. SNEED
UNITED STATES DISTRICT JUDGE

Copies furnished to:
Counsel of Record